UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVEN MITCHELL, et al.,

                    Plaintiffs,

        v.

OPPENHEIMER & CO., INC., et al.,

                    Defendants.

CASE NO. C25-5907 BHS

ORDER

THIS MATTER is before the Court on defendant Oppenheimer's motion to dismiss plaintiffs' claims against it, Dkt. 14.

Plaintiffs Steven Mitchell, Dori Mitchell, Jerome Hopper, and Lori Hopper allege defendant John Woods defrauded them of millions of dollars in a Ponzi scheme while he worked at Oppenheimer. Mitchell[1] alleges Oppenheimer knew of and perpetuated the fraudulent activity.

Oppenheimer is a brokerage and investment bank. *Id.* at 2. While it is registered in and primarily based out of New York, it has offices nationwide, including two in

[1] The Court refers to plaintiffs collectively as "Mitchell" for ease of reference.

ORDER - 1

Washington state. *Id.*; Dkt. 14 at 15; Dkt. 27 at 14. It is a registered securities broker-dealer in Washington. Dkt. 1 at 2. Woods is a former Oppenheimer investment broker. *Id.*

In 2008, while Woods was senior vice president of investments at Oppenheimer's Atlanta office, he founded Horizon Private Equity. *Id.* at 3–4. Horizon was registered in and operated out of Georgia. *Id.* at 7. Woods also owned and controlled Southport Capital, based in Georgia. *Id.* at 6. In 2015, Southport employee Michael Mooney met with Mitchell in Seattle to promote Horizon's investment products. *Id.* Mooney shared promotional materials allegedly depicting Horizon as sponsored by Oppenheimer, introduced Woods as the "guy that put all this together," and provided Woods' contact information. *Id.* at 6–7. After confirming Woods' connections to Oppenheimer, Mitchell invested in Horizon in 2016. *Id.*

In 2021, Mitchell brought a Financial Industry Regulatory Authority (FINRA) arbitration against Oppenheimer, alleging it had a role in Woods' Ponzi scheme. Dkt. 14 at 11; *Oppenheimer & Co. Inc. v. Mitchell*, No. 23-cv-00067-MJP, Dkt. 1. Oppenheimer sued in this District to obtain a declaratory judgment and to enjoin the arbitration, arguing it was not required to arbitrate because Mitchell was not its customer under the FINRA rules. *Id.* Judge Pechman agreed and ruled in Oppenheimer's favor. 2024 WL 1492874, at *6 (W.D. Wash. 2024).

In 2023, Woods pled guilty in federal court to wire fraud arising out of the Horizon Ponzi scheme. *Id.* at 7–8. He is serving his sentence in a federal prison in Alabama. *Id.* at 2.

ORDER - 2

In April 2025, the Ninth Circuit affirmed Judge Pechman's Order. 135 F.4th 837 (9th Cir. 2025). It held that Mitchell was not an Oppenheimer customer because he "did not purchase commodities or services from John Woods or any other associated person of Oppenheimer," and was therefore not entitled to FINRA arbitration. *Id.* at 851–52.

In October 2025, Mitchell sued Woods and Oppenheimer in this Court. Dkt. 1. He brings Georgia RICO, Securities Act of Washington, negligence, and negligent misrepresentation claims against both defendants. He also brings a negligence per se claim against Oppenheimer under 17 C.F.R. § 275.206(4)-7 and Georgia and Washington regulations.

Oppenheimer[2] moves to dismiss all of Mitchell's claims against it on several grounds. Dkt. 14. Under Rule 12(b)(2), it argues that it is not subject to personal jurisdiction in Washington. It further argues Mitchell's claims are time barred because the relevant statutes of limitations and repose have lapsed. It also raises claim and issue preclusion, arguing that Mitchell should have countersued in the first case before Judge Pechman. Finally, it contends Mitchell does not adequately allege his Georgia RICO claim. Because the Court concludes that it does not have personal jurisdiction over Oppenheimer, it need not address the latter arguments.

---

[2] Woods purports to join Oppenheimer's motion to dismiss, arguing that because it has been "determined as a matter of law that Plaintiffs had no relationship or communications with Woods, this Court does not have personal jurisdiction over Woods." Dkt. 29. Mitchell's complaint plainly contradicts this assertion. Dkt. 1 at 7 ("Woods backed that up in his telephone conversation with Mr. Hopper while also touting his experience at Oppenheimer."). And it appears that Mooney acted as Woods' agent. *Id.* at 6–7. Woods' arguments for lack of personal jurisdiction fail and Mitchell's claims against him remain.

ORDER - 3

## I.   DISCUSSION

Oppenheimer moves to dismiss for lack of personal jurisdiction. Dkt. 14 at 15. It argues it is incorporated and principally based in New York, and that there are no "allegations of any contact, at any time . . . between any Oppenheimer employee" and Mitchell to confer specific jurisdiction. *Id.* at 15–16 (citing *Daimler v. Bauman*, 571 U.S. 117, 138 (2014)). Mitchell responds that Oppenheimer's business contacts in Washington are strong, and that the Court's exercise of personal jurisdiction would be reasonable. Dkt. 27 at 13–14.

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Absent an evidentiary hearing, plaintiffs need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss. *Id.* That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A plaintiff cannot simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.

To establish personal jurisdiction, a party must show both that the forum state's long-arm statute confers personal jurisdiction over an out-of-state defendant, and that the

exercise of jurisdiction would be consistent with federal due process requirements. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits, so the jurisdictional analysis under state law and federal due process are the same. *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465 (1999); *Schwarzenegger*, 374 F.3d at 800–01. Due process requires that a nonresident defendant "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)).

A court may exercise either general or specific jurisdiction over a nonresident defendant. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). General jurisdiction exists where the defendant's affiliations with the forum state are so "continuous and systematic" that it is "essentially at home" there. *Daimler*, 571 U.S. at 119 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 920 (2011)).

For specific jurisdiction, the Ninth Circuit applies a three-prong test. *Schwarzenegger*, 374 F.3d at 802. First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id*. Second, "the claim must be one which arises out of or relates to the defendant's

ORDER - 5

forum-related activities." *Id*. Finally, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id*. The plaintiff bears the burden on the first two prongs. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1087 (9th Cir. 2023). If they are met, the defendant then must present "a compelling case" as to why the exercise of jurisdiction would not be reasonable. *Id.*

General jurisdiction does not exist here; Oppenheimer is plainly "at home" in New York, where it is incorporated and headquartered, not Washington. As for specific jurisdiction, Mitchell meets prong one. Oppenheimer is registered in Washington as a broker-dealer and with offices here, it has availed itself to the state's securities market. Whether Mitchell meets prong two is a closer question.

A claim *arises out* of a defendant's forum contacts if the contacts caused the plaintiff's injury, whereas a claim *related* to the forum contacts does not require causation. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504–05 (9th Cir. 2023) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021)). In other words, "relatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove." *Id.* at 505. Relatedness "does not mean anything goes." *Ford*, 592 U.S. at 362. Rather, it requires a "strong relationship among the defendant, the forum, and the litigation." *Id.* at 365 (citation modified).

In *Ford*, two allegedly defective Ford vehicles crashed and harmed plaintiffs in Montana and Minnesota, respectively. *Id.* at 365. Ford argued that because it designed, manufactured, and sold those specific cars outside Montana and Minnesota and "later

resales and relocations by consumers had brought the vehicles" there, the forum states lacked personal jurisdiction. *Id.* at 356–57. The Supreme Court disagreed, holding that the plaintiffs' claims related to Ford's extensive conduct in those states *Id.* at 365–66, 371. Ford had "systematically served a market in Montana and Minnesota" by advertising, selling, and servicing those exact car models for many years. *Id.*

The Ninth Circuit has interpreted *Ford* to mean "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts" or "the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Yamashita*, 62 F.4th at 505–06.

Mitchell does not similarly allege harm arising out of or related to Oppenheimer's Washington's contacts. He does not allege Oppenheimer's broker-dealer activities in the state caused, or are related in anyway to, his injuries, nor does he sufficiently plead a connection between the two. In *Ford*, Ford's active and pervasive participation in the forum states' markets included the exact car models that caused the plaintiffs' harm. Mitchell's basis for relatedness is far more attenuated. Oppenheimer certainly does business in Washington and Mitchell invested in Horizon based on its purported association with Oppenheimer, but that is where the link ends. Indeed, it has already been established that Mitchell was not an Oppenheimer customer. *Oppenheimer*, 135 F.4th at 851–52. It is unlikely, and frankly unforeseeable, that by doing business in Washington, Oppenheimer risked non-customer Washington residents falling for a Ponzi scheme run by a Georgia-based employee.

ORDER - 7

Mitchell's claims do not arise out of and are not related to Oppenheimer's Washington activities. The Court cannot exercise personal jurisdiction over Oppenheimer in Washington state. The Court is sympathetic to the Mitchell's claimed injuries. He may re-file in a forum that is better suited to adjudicate his claims.

Oppenheimer's motion to dismiss, Dkt. 14, is **GRANTED**. Mitchell's claims against Oppenheimer are **DISMISSED without prejudice** for lack of personal jurisdiction. Mitchell's claims against Woods remain.

IT IS SO ORDERED.

Dated this 15th day of June, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 8